630 So.2d 825 (1993)
Jane DOE
v.
John P. McNULTY, M.D., et al.
No. 93-CA-1805.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 1993.
Writ Denied January 13, 1994.
*826 John D. Rawls, New Orleans, for plaintiff/appellee.
Lawrence J. Centola, Jr., Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, for defendant/appellant.
KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
We must decide in this case whether the defendant's failure to timely diagnose the plaintiff's condition either as HIV-positive or as AIDS-infected caused her to lose one year of life AIDS-free, one year of her life expectancy, and one year of her ability to work, and whether the jury committed manifest error in awarding the plaintiff $700,000 in general damages and $314,000 medical and special damages.
Plaintiff Jane Doe[1] (Doe) was exposed to the HIV virus through sexual contact in 1980. The virus weakened her immune system, allowing the development of opportunistic infections. She first consulted the defendant's doctors in August 1990, but they failed to diagnose her either as HIV positive or AIDS-infected. In November 1990, she was diagnosed as having active AIDS. Doe alleges that the delayed diagnosis caused her to lose one year of life AIDS-free, one year of her life expectancy, and one year of her ability to work. She does not contend that the defendants exposed her to the AIDS virus or that she will succumb to the disease.
Doe settled with the medical defendants and their insurer for $100,000 pursuant to LSA-R.S. 40:1299.44(C)(5). The medical defendant's admission of liability and settlement payment eliminated all liability issues as to the Patient's Compensation Fund (Fund), thereby reducing the case to the issue of quantum. La.R.S. 40:1299.44(C)(5). Thereafter, the plaintiff proceeded to trial against the Fund before a jury. The jury returned a verdict of $700,000 for general damages, which included physical pain and suffering, mental anguish, disability, and loss of enjoyment of life. This award was reduced to $500,000 less a credit of $100,000 pursuant to LSA-R.S. 40:1299.42. Additionally, the jury awarded the plaintiff medical expenses of $313,400; loss of earning capacity and wages of $37,090 for one year, and loss of personal services of $4,490 for one year.[2]
The issue of the failure to timely diagnose Doe's medical condition and its causative effect on Doe's injuries was seriously contested by the parties. The medical defendants admitted that they negligently failed to timely diagnose the plaintiff's condition as HIV positive or AIDS-infected. The plaintiff's infectious disease expert, Dr. Michael Hill, repeatedly testified that within the "reasonable medical probability" standard and the "more likely than not" standard, if the plaintiff had been properly diagnosed and treated no later than August 18, 1990, which was the date the medical defendants should have diagnosed and treated her, she would not have contracted Pneumocystis carinii pneumonia (PCP), she would not have infection in her mouth and throat, and she could have continued to work for another year. He further opined that diagnosis and treatment would have prolonged the plaintiff's life for one year and that her progression from HIV-positive to AIDS would have been arrested for one to one and one-half years.
In rebuttal, plaintiff called Dr. William Brandon, director of the HIV section at LSU Medical School, who was accepted as an AIDS expert. The defendant claims the court erred in allowing him to testify as a rebuttal witness. A review of the record indicates that he was called to rebut the defendant's medical expert, Dr. Brobson Lutz. The trial court is vested with great discretion in regulating rebuttal evidence. Bordelon v. Drake, 578 So.2d 1174 (La.App. 5th Cir.1991). We find no error in the admission of his expert testimony in rebuttal.
Dr. Brandon disagreed in part with Dr. Lutz's opinion. He concluded that most likely, had the defendants correctly diagnosed *827 and treated the plaintiff in August 1990, the September 1990 PCP episode could have been averted or the effects of the illness could have been reduced. Further, Dr. Brandon stated that timely treatment before an acute episode provides an expectation for better long-term treatment. His testimony on the survival rate of a person with PCP or AIDS was equivocal and differed in part with Drs. Hill and Lutz.
The defendant called Dr. Brobson Lutz, the Director of the New Orleans Health Department and an expert in internal medicine. Dr. Lutz never examined the plaintiff, but testified from her medical records. He stated that, in his opinion, the plaintiff had AIDS on September 27, 1990 when she was hospitalized in Ohio, even though the disease was not diagnosed at that time. He concluded that, in August 1990, the plaintiff did not have sufficient symptoms for a doctor to make an AIDS diagnosis, although the HIV virus had destroyed her immune system. However, when questioned concerning the effect treatment for the HIV virus would have had in August 1990, Dr. Lutz said that preventive treatment can be very successful and useful. He admitted that if a patient's immune system has not been totally devastated that prophylactic or preventative treatments for PCP can result in a longer life and a longer period free of AIDS symptoms. When defense counsel asked what effect AZT treatment begun on August 10, 1990 would have on September 27, 1990, he was unable to render any opinion.
In State v. Smith, 523 So.2d 815 (La. 1988), the Supreme Court stated that causation is a question of fact. Here the evidence on causation is not in conflict. Dr. Hill causally connected the defendant's negligence to the patient's injuries. Dr. Brandon supported his opinion in part. Dr. Lutz was unable to contradict the plaintiff's medical experts. We conclude that the jury's finding of fact on this issue was not clearly wrong. Furthermore, our review of the record leads us to conclude that the jury's conclusion was a reasonable one.
Tragically, Doe acquired the deadly HIV virus which remained static until August 1990. Unfortunately, her physicians failed to diagnose her illness. Her symptoms continued, resulting in hospitalization in Ohio in September 1990. By November 1990, her condition deteriorated to the point that she was critically ill from PCP and oral thrush. A diagnosis of HIV positive or AIDS was made at this time. Thereafter, she underwent extensive and painful therapy until she was released from Pendleton Hospital. Since her discharge, she is required to follow a special diet, take medication regularly, and undergo intrusive and painful medical tests and treatment. The medical evidence reflects that she will be required to continue these procedures until her death.
Furthermore, the uncontradicted psychiatric and psychological evidence discloses that the plaintiff has experienced mental suffering caused by the defendants. She is depressed, angry, and distrustful of all physicians. She is mentally preoccupied with AIDS, with her illness, and with the fear of dying. Although all AIDS patients have similar mental reactions, the experts testified that the plaintiff's reaction is excessive because of the defendants' misdiagnosis. Her mental anguish is enhanced at a time in her life when she should be able to rely upon her physicians to palliate her condition. Further, her constant distrust of all physicians exacerbates her intense emotional distress.
Doe described to the jury her feeling about her shortened life expectancy, the loss of her hope, dreams and ambitions, and the changes in her life since she discovered that she is terminally ill.
The members of this panel believe that the award of $700,000 for the losses claimed by the plaintiff is excessive. However, the Louisiana Supreme Court, in a trilogy of cases, has severely restricted an appellate court's ability to correct errors in excessive or inadequate general damage awards. See Rossell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, 617 So.2d 880 (1993). Most recently, in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the Supreme Court established the standards for appellate review of general damage awards as follows:
The discretion vested in the trier of fact is "great," and even vast, so that an appellate *828 court should rarely disturb an award of general damages.
For these reasons we affirm the trial court award of $700,000 general damages, subject to the limitation of recovery provided by La.R.S. 40:1299.44(C)(5).
The defendants also claim that the $313,400 awarded the plaintiff for medical expenses is excessive. They contend that there is no legal basis to substantiate that sum and that the jury awarded the plaintiff the costs of medication, treatment and supplies necessary until the plaintiff's death. They assert that they are liable only for the damages the defendant caused for the delayed diagnosis.
The jury verdict is confusing. It is clear that the jury intended to award Doe the costs of the 1990 Ohio hospitalization in the sum of $9,838.40 and the Pendleton Memorial hospitalization in the sum of $53,202.25, which total $63,040.65. Additionally, the jury awarded her the costs of her other medical expenses, which included the following amounts: Dr. Hill, $7,925.60; Dr. Howze, $1901.25; Dr. Scrignar, $1600.00; and laboratory charges, $1870.12, for a total of $13,296.97. All the medical expenses taken together total $76,337.62. This leaves an unexplained award of $237,062.38.
Doe argues that from September, 1992, her medical expenses have exceeded $536,658.00; this argument is based on payments made by INFUSACARE.[3] However, the record contains no evidence of any kind concerning the apportionment of these expenses to the damage caused by the defendant. Obviously, the plaintiff incurred these costs as a result of her illness, which is progressive and terminal. However, we are unable to correlate from a preponderance of the evidence, what, if any, of the medical expenses incurred between September 1992 and the date of the trial were caused by the defendants' negligence. Therefore, we amend the judgment to delete $237,062.38 from the judgment.
Accordingly, we affirm the general damage award of $700,000, subject to the limitation of recovery provided by LSA-R.S. 40:1299.44, and amend the judgment to reduce the medical expense award to $76,337.62. All costs and interest are assessed to the appellant.
AFFIRMED AS AMENDED.
NOTES
[1] Out of respect for the plaintiff, we will use the pseudonym supplied by the parties. Her correct status is contained in the record.
[2] Defendant does not challenge the causation or excessiveness of the wage and personal service loss.
[3] INFUSACARE is a third party payor of AIDS medical expenses.